386 A.2d 1096.

GENERAL MOTORS ACCEPTANCE CORPORATION *v.*
THE WASHINGTON TRUST COMPANY OF WESTERLY.

MAY 22, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   This is an appeal from a judgment entered for the plaintiff for $5,724.05 plus interest and costs. The trial justice, sitting without a jury, ruled that the plaintiff's security interest in an automobile was superior to that of the defendant.

On August 3, 1972, Thibault's Inc., a Westerly automobile dealer, prepared an invoice reciting the sale of a 1972 Cadillac Sedan DeVille to Rosemary Lounsbury for $7,000. According to the invoice, she would furnish $1,400 of the sale price upon delivery of the automobile and would finance the balance with plaintiff General Motors Acceptance Corporation.

On August 4, 1972, Rosemary and her husband, David, executed a promissory note evidencing a loan of $2,995[1] from defendant Washington Trust Company of Westerly. Fourteen hundred dollars of that amount was used as a downpayment for the Cadillac. The balance represented a preexisting debt owed to defendant. Three days later, the Lounsburys and defendant executed a security agreement (chattel mortgage) designating the automobile as security for the loan. On August 5, 1972, David gave Thibault's Inc. the $1,400 downpayment and executed in his name alone an installment sales contract in favor of said dealer in the amount of $5,724.05.[2] Thereafter, Thibault's Inc. assigned that instrument to plaintiff.

On August 9, 1972, defendant filed a financing statement with the Secretary of State designating both David and Rosemary as debtors. The following day plaintiff filed a financing statement with the same office listing only David as debtor. David failed to make any payments to plaintiff. Both David and Rosemary apparently defaulted on their note to defendant, which subsequently repossessed the Cadillac. The plaintiff and defendant both asserted rights in the collateral. By agreement of the parties, the motor vehicle was sold for $4,500 before trial.

The trial justice held that because David had relinquished his interest in the automobile by entering into the installment sales contract with the dealer, he had no interest to transfer to defendant at the time he executed the security agreement. The judge concluded, therefore, that plaintiff was entitled to priority under G.L. 1956 (1969 Reenactment) §6A-9-312(4).

---

[1]The actual amount was $3,053.66 ($2,995 loan plus insurance and other fees).

[2]This figure represents $5,650, the amount advanced, plus insurance and filing costs. When the amount of the loan is added to the $1,400 downpayment, the total of $7,050 palpably exceeds the $7,000 cash price for the Cadillac. This situation arose because the buyer had been credited with $300 for a 1967 Oldsmobile traded in at the time of the purchase. That amount was offset by $350 still owed to the plaintiff and Thibault's, Inc.

The primary question to be addressed is whether plaintiff acquired a valid security interest in the cadillac. Under the applicable Uniform Commercial Code (code) provision, "a security interest is not enforceable against the debtor or third parties unless the debtor has signed a security agreement which contains a description of the collateral * * * ." Section 6A-9-203(1)(b). A security agreement is defined as "an agreement which creates or provides for a security interest." Section 6A-9-105(1)(h). In the case at bar, the parties concede that David was the actual debtor. Additionally, the evidence introduced at trial indicates that David executed in his name only an installment sales contract identifying the Cadillac. We hold that the installment sales contract, which was assigned to plaintiff, served as a security agreement in full compliance with the foregoing provisions.

Next, we must consider whether plaintiff's security interest in the collateral attached. Section 6A-9-204(1) states that a security interest in collateral attaches when (1) there is agreement to that effect, (2) value is given, and (3) the debtor has rights in the collateral. It is undisputed that the three elements required for attachment of the security interest were satisfied. The first two requirements of that section were clearly met. The fact remains, however, that the debtor must have "rights in the collateral" before the security interest will attach to the collateral. The phrase "rights in the collateral" as used in §6A-9-204(1) has no clear definition. However, the code recognizes that a debtor who does not own the collateral may nonetheless use the collateral for security, thereby acquiring "rights in the collateral," when authorized to do so by the actual owner of the collateral. *K.N.C. Wholesale, Inc.* v. *AWMCO, Inc.*, 56 Cal. App. 3d 315, 128 Cal. Rptr. 345 (1976); *see* §6A-9-105(1)(d), Comment 2 and §6A-9-112.

An examination of the record reveals that according to the automobile invoice. the verification of registration dated

March 5, 1973, and the testimony of two witnesses,[3] Rosemary was the registered owner of the automobile. Although title to the collateral was held by Rosemary, the trial justice concluded that David had a "right" in the automobile as a matter of law. As previously noted, David paid the $1,400 downpayment and executed the installment sales contract. Thus, we are of the opinion that a valid security interest in favor of plaintiff attached to the collateral by reason of the installment sales contract.

Clearly, then, plaintiff has satisfied the requirements relevant to enforceability and attachment. In Rhode Island, perfection of a security interest in an automobile involves the additional step of filing a financing statement. Section 6A-9-302(1)(d). Financing statements must be signed by the debtor and the secured party. Section 6A-9-402(1). In order to ascertain the "debtor" for the purpose of §6A-9-402(1), it is necessary to consider §6A-9-105(1)(d). This provision reads:

> " 'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral, in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligations, and may include both where the context so requires."

The purpose of the filing requirements for perfection of security interests is to guarantee that third parties will have notice of existing security interests in collateral. *See* §6A-9-402 Comment 2. In cases where the "debtor" is not the owner but has only obtained his rights in the collateral due to

---

[3] A dealer remission supervisor employed by the plaintiff and the salesman who sold the automobile testified at trial that Rosemary was the registered owner of the automobile.

the owner's permission, a financing statement in the name of the "debtor" alone fails to give subsequent creditors of the owner any notice that the collateral is subject to a prior security interest. To avoid such potential fraud or misrepresentation, the term "debtor" as used in §6A-9-402(1) must be construed as referring to both the actual debtor and the owner of the collateral, i.e., both names are required on the financing statement to perfect the security interest. *K.N.C. Wholesale, Inc.* v. *AWMCO, Inc.*, 56 Cal. App. 3d at 319-20, 128 Cal. Rptr. at 348-49. The financing statement filed by plaintiff does not refer to Rosemary, the owner of the collateral, and is therefore defective.

We now examine the status of defendant's security interest. As was pointed out earlier, to enforce a security interest against the debtor or third parties the secured party must demonstrate that "the debtor has signed a security agreement which contains a description of the collateral * * * ." Section 6A-9-203(1)(b). The record indicates both Rosemary and David signed the security agreement (chattel mortgage) granting a security interest to defendant and designating the Cadillac as collateral. In order to gain priority over other secured creditors, the secured party must perfect its security interest in the collateral. The code provides that a security interest must attach before perfection can occur. In the instant action, defendant's security interest attached when the Lounsburys entered into a security agreement with defendant. Additionally, it is necessary to file a financing statement to perfect a security interest in a motor vehicle. Section 6A-9-302(1)(d). The financing statement filed by defendant which was signed by David and Rosemary, complied with §6A-9-402(1)[4] and, therefore, served to perfect its security interest in the Cadillac.

---

[4]General Laws 1956 (1969 Reenactment) §6A-9-402(1) provides in pertinent part:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral."

Finally, we must ascertain whether the defendant has a perfected security interest to the extent of the entire amount of its loan, $2,995. An examination of the evidence reveals that $1,595 of the amount advanced by the defendant to the Lounsburys represented a pre-existing debt. We must consider whether that pre-existing indebtedness constitutes "value" under the code for the purpose of perfection of the defendant's security interest in the motor vehicle. According to §6A-1-201(44)(b), a person gives "value" for rights if he acquires them "as security for or in total or partial satisfaction of a pre-existing claim." Because the defendant gave value by taking a security interest in the automobile to secure a pre-existing claim, we believe that the defendant possesses a perfected security interest relative to the entire amount of its loan. Therefore, we hold that the defendant's perfected security interest in the automobile is superior to the plaintiff's unperfected security interest.

The defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court with a direction to enter judgment in accordance with this opinion.

*Taft & McSally, James J. McKenna,* for plaintiff.

*Thomas H. Eyles,* for defendant.