**FIRST NATIONAL BANK IN PIERRE, SOUTH DAKOTA, a national banking corporation, Plaintiff and Appellee,**

v.

**Pat FEENEY, Defendant, Third Party Plaintiff and Appellant.**

v.

**Robert WOLDT, Third Party Defendant.**

No. 15034.

Supreme Court of South Dakota.

Argued March 19, 1986.

Decided Sept. 24, 1986.

Rehearing Denied Oct. 28, 1986.

Charles P. Schroyer of Schmidt, Schroyer, Colwill, Zinter & Barnett, Pierre, for plaintiff and appellee.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for defendant, third party plaintiff and appellant.

T.F. Martin of Martin and McCann, Brookings, for third party defendant.

MORGAN, Justice.

Defendant-third party plaintiff Pat Feeney (Feeney) appeals from judgment of the trial court granting First National Bank in Pierre (Bank) a money judgment against Feeney. The trial court determined that Bank had a valid security interest in ear corn taken by Feeney from Robert Woldt (Woldt), manager of Oahe Land and Cattle Company (Oahe). We affirm.

In 1981, Woldt was manager of Oahe lands near Pierre. As part of his duties, Woldt negotiated with Bank for operating funds. On March 3, 1981, Woldt signed a note as manager for Oahe, with Oahe as maker and Bank as payee. This note was secured by a security agreement which included 1981 crops as collateral. Woldt also signed the security agreement in his managerial capacity. This note was a renewal of a prior note due Bank from Oahe.

On that same date, Woldt signed a second note, with himself as maker and Bank as payee. This note was not secured. Woldt obtained the funds from this note to cash rent the land he had been managing for Oahe. Woldt intended to raise feed crops for his own benefit.

In December 1981, Woldt and Feeney were negotiating the purchase by Feeney of ear corn Woldt harvested that year (1981 crops). An agreement was never reached, however, sometime thereafter Feeney appropriated approximately 290 tons of this corn. Shortly thereafter, Bank initiated this action, claiming a valid security interest in the corn taken by Feeney. Following trial, the court ordered Feeney to pay Bank for the value of this interest. Woldt was ordered to reimburse Feeney for some cattle and grazing deals they had entered into. These Woldt/Feeney deals are extraneous to this appeal. Feeney then filed a notice to appeal that portion of the judgment awarding Bank a money judgment against him. He specifically noted he was not appealing the trial court's award of a judgment in his favor against Woldt. Woldt then attempted to appeal that portion of the judgment affecting him. This court dismissed his appeal for failure to timely file his brief. (# 15064 order dated November 14, 1985).

On appeal, Feeney raises only one issue. He claims the trial court erred in determining that Bank had a valid security interest in the corn he appropriated. Feeney initially contends that Bank's security agreement was with Oahe, not Woldt, and that the corn Feeney took was Woldt's alone. Feeney claims, therefore, that Oahe did not have "rights in the collateral" under SDCL 57A–9–204 (prior to 1982 amendment) and thus Bank could not have a valid security interest if its debtor (Oahe) did not have rights in the collateral. Secondly, Feeney argues that even if we are to hold Oahe had rights in the collateral, Bank did not give value for its security agreement, and thus the Bank's interest did not attach to the collateral.

We first note that the findings of fact of the trial court will not be disturbed on appeal unless clearly erroneous. SDCL 15–6–52(a); *Wiggins v. Shewmake*, 374 N.W.2d 111 (S.D.1985). In applying this standard, we will overturn the findings of the trial court when, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Wiggins, supra.*

Feeney argues that Oahe had no rights in the corn, and thus the Bank's security interest did not attach under SDCL 57A-9-204. As a general proposition, the rule Feeney is relying upon is correct. "If a debtor encumbers 'his asset' and it turns out not to be his asset, the Article Nine secured party is generally out of luck." J. White & R. Summers, *Uniform Commercial Code* § 23-4, at 795 (1st ed. 1972). Essentially, Feeney's argument rests upon the claims by Woldt that the crop was his individually, not Oahe's, and that Woldt had supplied the money and labor needed to harvest the corn. The question then becomes what rights did Oahe have in Woldt's corn crop?

> The phrase 'rights in the collateral' as used in [§ 57A-9-204] has no clear definition. However, the code recognizes that a debtor who does not own the collateral may nonetheless use the collateral for security, thereby acquiring 'rights in the collateral,' when authorized to do so by the actual owner of the collateral.

*General Motors Accept. Corp. v. Washington Tr. Co.*, 120 R.I. 197, 386 A.2d 1096, 1098-99 (1978). *See also K.N.C. Wholesale, Ind. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 128 Cal.Rptr. 345 (1976). *Accord State Bank of Young America v. Vidmar Iron*, 292 N.W.2d 244 (Minn.1980); *Brown v. United States*, 622 F.Supp. 1047 (D.S.D. 1985).

■ In this situation, it is clear Oahe obtained "rights in the collateral" through the consent of Woldt, the actual owner. Woldt signed the security agreement which pledged the 1981 crops for Oahe's debt. Moreover, Woldt testified:

A. I signed with the intent that the bank had the security agreement until such time the $173,000 was advanced and at that time the security interest would be transferred....

Q. So it was your intention at the time you signed that that the security agreement covered this property?

A. Certainly.

Q. Even though it was yours and not belonging to Oahe?

A. Certainly.

Thus, Oahe obtained rights in the collateral pursuant to Woldt's consent and actions, and Bank's security interest could attach.

■ Even though Oahe had the necessary rights in the corn, we must probe further, since in many cases a problem of notice to third parties arises when the owner and debtor are not the same entity. In order to fulfill the formal requisites of a financing statement and be enforceable against subsequent, innocent third-party purchasers, the financing statement must show the names of both the debtor and the owner of the collateral when they are not the same person. SDCL 57A-9-402(1). *See* SDCL 57A-9-105(1)(d) ("debtor" as used in 57A-9-402(1) includes owner of collateral).

In *K.N.C., supra,* the California court determined that where the debtor and owner are not the same person, the secured party cannot file its financing statement in the name of the debtor alone and be relieved of the notice requirement. Dual filing is necessary to insure innocent third parties are given adequate notice of the secured parties' interest. Unless a filing is made under both parties' names, a third party may index only the owner's file and find no interest filed against the property.

■ Bank did not file a financing statement against Woldt individually. Thus, an innocent third party may have been misled into thinking there was no security interest in the ear corn. We note, however, that Feeney was not such an innocent, unknowing third party.

Q. You didn't ever tell Mr. Feeney this corn was the property of Oahe, did you?

A. [WOLDT] Mr. Feeney knew it had a mortgage against it by First National Bank.

Q. You said that Mr. Feeney knew the corn had a mortgage on it. Could you describe how you know he knew that?

A. Because we had visited about it at length before and I had told him that before I negotiated any contracts of any nature I would have to have the expressed approval of the Bank. Because I wouldn't sell or negotiate a contract on mortgaged property.

We note that Feeney later disputed this testimony by testifying that he did not have notice of the Bank's security interest. Conflicts in testimony of this nature are best resolved by the trial court. The trial court had the opportunity to observe the demeanor of the witnesses and was in a much better position to judge their credibility than are we. "It is well settled that the credibility of witnesses and weight of evidence is for the trial court and that a reviewing court accepts that version of the evidence, including the inferences that can be fairly drawn therefrom, which is favorable to the trial court's action." *Nicolaus v. Deming,* 81 S.D. 626, 627, 139 N.W.2d 875, 875 (1966). *See Nelson v. Palmquist,* 363 N.W.2d 570 (S.D.1985); *Endres v. Warriner,* 307 N.W.2d 146 (S.D.1981).

■ Feeney also claims that Bank's security interest was not perfected because Bank did not give value for their interest as required by SDCL 57A-9-204(1). SDCL 57A-1-201(44) defines value: "[A] person gives 'value' for rights if he acquires them ... (b) [a]s security for or in total or partial satisfaction of a preexisting claim...." As noted above, Oahe obtained the March 3 note as a renewal of a previous note. The security agreement was filed on this note. Feeney claims Bank did not give new value for the security interest. Under SDCL 57A-1-201(44), value can be given when security is taken on a preexisting debt. "Despite the plain language of [57A-1-201(44)], several parties have argued that a creditor does not give value if he takes his security interest to secure a pre-existing claim against the debtor. On this point, the courts have tossed these parties out on their ears, as well they ought." J.

White & R. Summers, *Uniform Commercial Code* § 23-4, at 915 (2d ed. 1980).

Accordingly, the judgment of the trial court is affirmed.

WUEST, C.J., and HENDERSON and SABERS, JJ., concur.

FOSHEIM, J., concurs specially.

FOSHEIM, Justice (concurring specially).

While I concur with the majority's lucid application of the U.C.C., I believe it improvidently indulges in unnecessary fact finding in concluding Feeney had actual notice of Bank's security interest. I therefore can only concur specially.

According to the majority opinion the existence of such notice is decisive. However, no finding was entered regarding whether Feeney had actual notice. A trial court's failure to make a finding regarding such a decisive fact is cause for reversal. *Essington v. Buchele,* 115 N.W.2d 129 (1962); *Bell v. Midland Nat. Life Ins. Co.,* 78 S.D. 349, 102 N.W.2d 322 (1960); *Craigo v. Craigo,* 22 S.D. 417, 118 N.W. 712 (1908). However, Feeney does not attack the trial court's judgment on the basis that no finding of fact on the disputed notice issue was entered. We therefore cannot consider on appeal the failure to make such a finding. *See* SDCL 15-26A-60(4); *Graham v. State,* 328 N.W.2d 254 (S.D.1982); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D. 1976); *Schumacher v. R-B Freight Lines,* 73 S.D. 535, 45 N.W.2d 458 (1950). The natural result of the "waiver" of this basis for appeal is that the matter be resolved in favor of the judgment. I would so conclude. Such a holding would obviate the need for this Court to exceed its functional boundaries by deciding the notice issue.