**In re BOOGIE ENTERPRISES, INC., dba Action Headwear, fka Plainview Headwear, Debtor.**

**David A. GILL, Chapter 7 Trustee, Plaintiff–Appellee,**

**v.**

**UNITED STATES of America, Defendant–Appellant.**

**Nos. CV 87–2482–ER, CV 87–1072–ER.**

United States District Court, C.D. California.

Sept. 30, 1987.

Jeffery L. Sumpter, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for debtor.

Jan L. Luymes, Asst. U.S. Atty., Robert C. Bonner, U.S. Atty., Los Angeles, Cal., for defendant-appellant.

### MEMORANDUM OPINION REVERSING DECISION OF BANKRUPTCY COURT

RAFEEDIE, District Judge.

This is an appeal from a decision of the United States Bankruptcy Court (Bankruptcy Judge William Lasarow). The bankruptcy court held that appellant (Small Business Administration, represented by the United States) did not have a perfected security interest in settlement proceeds because their UCC financing statement did not adequately describe the collateral.

Summary judgment in favor of appellee (the trustee in bankruptcy, Gill) was granted. This Court finds that appellant's description of "all personal property now owned or hereafter acquired" is a sufficient description under the requirements of § 9402 of the California Commercial Code. Therefore, the opinion of the bankruptcy court is reversed.

## FACTUAL BACKGROUND

In August 1981, the U.S. Small Business Administration ("SBA") made a loan of $150,000 to Boogie Enterprises ("debtor"). The debtor executed a promissory note, a security agreement, and a UCC–1 Financing Statement. The SBA subsequently subordinated its interest in all the collateral securing its direct loan to the Bank of America for its loan to the debtor.

The Bank of America took, as collateral for its loan, all the assets of the debtor. The debtor signed two security agreements in May 1983; one for equipment and the other for personal property. The security agreement for personal property granted the Bank of America a security interest in the following described personal property. Included, without limitation, were:

> A. All rights to the payment of money owed or hereafter acquired by Borrower, whether or not earned by performance including, but not limited to, accounts contract rights, chattel papers, instruments and general intangibles ...[1]

Bank of America, therefore, had a security interest in all of debtor's personal property. The only dispute is to whether they had a *perfected* security interest in the proceeds from a settlement of a legal dispute with McDonald's Corporation, Simon Marketing and LAOOC (hereinafter "McDonald's").

On May 2, 1983, debtor executed a UCC–1 Financing Statement, which was filed on May 23, 1983. At the time of filing there was no lawsuit between debtor and McDonald's. The financing statement covered the following types of property:

> All furniture, fixtures, equipment, personal property, machinery, inventory and accounts receivable now owned or hereafter acquired. All equipment, now owned or hereafter acquired, including but not limited to all of debtor's manufacturing and office equipment.

The debtor subsequently defaulted on its loan from Bank of America. The SBA honored its guarantee of the loan and the Bank of America assigned to the SBA its interest in the loan as well as the collateral and the documents evidencing its secured interest in the collateral. The Bank of America also filed a UCC–2 form showing the assignment to the SBA.[2]

On June 14, 1984 the debtor filed its Chapter 11 bankruptcy petition. The case was subsequently converted to a Chapter 7 liquidation by Order entered November 9, 1984. David Gill was appointed as Chapter 7 trustee.

The adversary proceeding involves a dispute between the Chapter 7 trustee and a secured creditor, the United States (on behalf of the U.S. Small Business Administration), over who has the superior lien to the remaining settlement proceeds of an action in state court between the Chapter 7 debtor and McDonald's. The government contends that it has a perfected security interest in the proceeds superior to the rights of the trustee. The trustee claims that the proceeds from the McDonald's settlement are not covered by the financing agreement and, therefore, the government does not have a perfected security interest in those proceeds. The trustee contends that his interest as a hypothetical lien creditor under 11 U.S.C. 544(a)(1) takes priority over the claim of the government since if a security interest is not perfected it will be defeated by lien creditors. Cal. Commercial Code 9301(1)(b).

On June 4, 1986 the trustee filed this adversary proceeding seeking a declaration

---

1. The security agreement also covered other forms of personal property not relevant to this case.

2. The outstanding principal on the SBA guaranteed loan is $391,609.57, plus interest of $57,574.66 as of February 5, 1986, with interest accruing thereafter at a rate of $142.16 per day.

that the government did not have an interest in or lien on the proceeds of settlement superior to the rights of the trustee. On July 24, 1986 the government moved to dismiss the action pursuant to Rule 12(b), F.R.C.P., and Bankruptcy Rule 7012(b) for failure to state a claim upon which relief can be granted. The motion was denied on August 26, 1986.

On December 29, 1986, the Bankruptcy Court heard the trustee's motion for summary judgment. The Court, after noting that it was a close question, granted the trustee's motion for summary judgment. The government is appealing the Bankruptcy Court determination that the trustee's interest in the settlement proceeds is superior to that of the United States.

## DISCUSSION

The issue presented in this case is whether the SBA has a perfected security interest in the McDonald's settlement proceeds. If the SBA does not have a perfected interest in the proceeds, then the trustee in bankruptcy, as a hypothetical lien creditor under 11 U.S.C. 544(a)(1), has a lien superior to that of any unperfected security interest. Cal. Commercial Code 9301(1)(b).

There is no dispute that the security interest covers such proceeds. The security agreement covering personal property now owned or hereafter acquired explicitly covers general intangibles. There is no dispute that the settlement proceeds are classified as general intangibles. However, the financing statement does not expressly cover general intangibles. Therefore, the issue is whether a general intangible which materialized several years after the filing of the financing statement is sufficiently described by a financing statement listing personal property now owned or hereafter acquired.

In determining whether the description in the financing statement is sufficient it is necessary to examine the purpose of the security agreement and the financing statement under the UCC. In *Thorpe Commercial Corp. v. Northgate Industries*, 654 F.2d 1245, 1248 (8th Cir.1981), the court discussed the differences between these documents.

The security agreement and financing statement have different functions under the UCC. The security agreement defines what the collateral is so that, if necessary, the creditor can identify and claim it, and the debtor ... can limit the creditor's rights in the collateral given as security.... The financing statement, on the other hand, serves the purpose of putting subsequent creditors on notice that the debtor's property is encumbered. The description of collateral in the financing statement does not function to identify the collateral and define property which the creditor may claim, but rather to warn other subsequent creditors of the prior interest....

Section 9402(1) of the California Commercial Code requires that the financing statement give the name of the debtor and secured party along with the address of the secured party "from which information concerning the security interest may be obtained." It also requires "a statement indicating the types, or describing the items, of collateral." Official Comment number Two to the section elaborates the theory underlying these requirements:

This section adopts the system of 'notice filing' ... What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs ...

California Code Comment Section 9402.

In *Biggins v. Southwest Bank*, 490 F.2d 1304 (9th Cir.1973), the court interpreted § 9420 in light of § 9110. Section 9110 provides that for the purposes of Division 9 of the Code, any description of personal property is "sufficient whether or not it is specific if it *reasonably identifies* what is described. Personal property may be re-

ferred to by general kind or class if the property can be *reasonably identified* as falling within such kind or class or if it can be so identified when it is acquired by the debtor." *Id.* (*quoting* Cal.Com.Code 9110). The court went on to state that the Code contemplates "no fine distinctions of form" under § 9402. "It merely looks to the substance of the transaction, and the ordinary and common meaning to be attached to that which the parties contemplate as the encumbered object." *Id.* at 1308.

Therefore, the test established in *Biggins* is whether the description of collateral in the financing statement "would indicate to an interested party the possible existence of prior encumbrances on the collateral." *In re Munger*, 495 F.2d 511, 512 (9th Cir.1974).

A number of cases are cited by each side as to whether a description of "all personal property" is sufficient. A split in authority exists as to the policy underlying § 9402. In *Thorpe*, the court identified the two perspectives. The first view deems a description adequate if it reasonably puts a subsequent creditor on notice of the need for further inquiry. "The reasonableness of the notice would depend on balancing such factors as the difficulty of making further inquiry against factors such as the likelihood the type of collateral described in the financing statement might include the collateral which interests the subsequent creditor." *Thorpe*, 654 F.2d at 1250.

The second view holds that a reasonable description of the collateral involves "balancing such factors as the ease with which the prior creditor could make the description of the collateral more precise or clearer against factors like the danger that a subsequent creditor might fail to recognize that the collateral is covered." *Id.*

Clearly, the California view, as described in *Biggins,* is closer to the first characterization (the inquiry notice view). Recently, however, the Bankruptcy Court of the

Ninth Circuit has made a new distinction. In *In Re Softalk Publishing Co., Inc.,* 64 B.R. 523 (9th Cir. BAP 1986), the Bankruptcy Appellate Panel distinguished a "notice filing system" from a "pure notice filing system." In *Softalk,* the financing statement referred to an attached list describing the collateral. The list, however, was not attached. The court held that collateral is not adequately described when there is a total failure to describe collateral. The UCC finance statement "gives notice that the secured party who has filed [a finance statement] may have a security interest *in the collateral described.*" *Id.* at 527. The court rejected the argument that the lack of any description would put a potential creditor on notice that a security interest may exist. "This argument would obviate any need to ever describe collateral." *Id.*

Appellee, extrapolating from *Softalk,* argues that a description as broad as "all personal property" is similarly inadequate because it provides no real notice of a security interest in the collateral. In support of this position, appellee cites cases which hold that a description of "all personal property" is insufficient.[3] However, as the split in authority would suggest, there are cases where such a description is deemed adequate.[4] *Softalk* appears to be consistent with the generally accepted test in this circuit: "The test of the sufficiency of the description is whether it would indicate to an interested party the possible existence of prior encumbrances on the collateral." *Munger,* 495 F.2d at 512. *Softalk* merely stands for the proposition that the total failure to describe collateral provides no notice.

The facts of this case suggest that the description did provide the requisite notice. The financing statement was filed before the suit with McDonald's began. The finance statement provided for:

**3.** In *In Re Fuqua,* 461 F.2d 1186 (10th Cir.1972), the court held that collateral of livestock, feed, and milking equipment was not covered by the financing statement description of "all personal property."

**4.** In *In Re JCM Coop. Inc.,* 8 UCC Rep. 247 (W.D.Mich.Bankr.1970), a financing statement covering all personal property was sufficient to perfect a security interest in inventory or proceeds.

All furniture, fixtures, equipment, personal property, machinery, inventory and accounts receivable now owned or hereafter acquired. All equipment, now owned or hereafter acquired, including but not limited to all of debtor's manufacturing and office equipment.

It appears that a creditor would be alerted to the fact that a wide variety of debtor's property is subject to a security interest. If a creditor was to provide a loan with the McDonald's settlement as collateral, he should be deemed on notice, by the financing statement filed prior to that settlement, that there may be a superior interest in that collateral. This position is bolstered by the fact that general intangibles are classified as personal property under the Code.[5] Cal.Com.Code 9106.[6]

As stated by the court in *In Re Miquel*, 30 B.R. 896 (Bankr.E.D.Cal.1983), the purpose of the financing statement is to obviate the need to file "cumbersome security agreements. Third parties are placed on notice as to what security interest another may have and that further inquiry is necessary." *Id.* at 898. To hold that the description is inadequate because it failed to state that general intangibles were secured would be to require the filing of the security agreement. If a form of personal property is deemed not covered by the designation "personal property now owned and hereafter acquired" then the financing statement will have to list all the types of personal property covered. When all personal property now owned or hereafter acquired is covered in the financing statement then it should not be necessary to list the subclasses of that property in the financing statement. In cases where the financing statement covers many different types of property interest, as in this case,

the designation of all personal property will put a creditor on notice that settlement proceeds may be encumbered. Therefore, inquiry notice is provided by the designation "all personal property now owned or hereafter acquired" in this case.

5. In *In Re Varney Wood Products, Inc.,* 458 F.2d 435 (4th Cir.1972), the financing statement described the collateral as "accounts receivable." This was deemed sufficient to perfect a security interest in the proceeds of a contract. The court stated that all that is needed is a description which would "generate further inquiry." The court held that the term accounts receivable sufficiently described the collateral "since anyone going to the code and comments for guidance ... would be given the definition of 'accounts receivable' as advocated by [the credi-

tor]. [A] person operating within the code's framework would be on notice that this term could be used to describe a given item of collateral such as the right of payment under the ... contract." *Id.* at 437.

6. The California commercial Code states that a general intangible means "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." Cal.Com.Code 9106.