MERCHANTS NATIONAL BANK OF
CEDAR RAPIDS, Iowa,
Plaintiff–Appellee,

v.

John T. HALBERSTADT and Mary
Susan Halberstadt, Defendants,

v.

MELBOURNE SAVINGS BANK,
Intervenor–Appellant.

No. 87–35.

Court of Appeals of Iowa.

April 20, 1988.

Charles F. Hinton of Hinton & Zager, Waterloo, and Timothy C. Boller of Gallagher, Langlas & Gallagher, P.C., Waterloo, for intervenor-appellant.

Richard G. Hileman, Jr. and Dennis J. McMenimen of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for plaintiff-appellee.

James C. Ellefson of Welp, Harrison, Brennecke & Moore, Marshalltown, for defendants Halberstadt.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

OXBERGER, Chief Judge.

This appeal is brought by Melbourne Savings Bank (Melbourne) challenging the district court's ruling in favor of Merchants National Bank of Cedar Rapids (Merchants). Melbourne asserts the district court erred in finding that Merchants' attachment lien was superior to any security interest Melbourne had in certain coins and pieces of jewelry belonging to the defendants, the Halberstadts. We affirm.

John Halberstadt was indebted to both Melbourne and Merchants. He entered into three security agreements with Melbourne to obtain financing for his meat processing and farming operations. The financing statements relating to the farm loans contained the following collateral description:

All my cattle, hogs, other livestock and all the increase therefrom; produce and products thereof, now owned or hereafter acquired; grain, feed, crops and products thereof, grown, growing or to be grown in the future and all proceeds thereof; all implements, machinery, attachments, parts and replacements, tools and equipment; contract rights, accounts and all proceeds it being the intention of the debtor to include herein all personal property now owned or hereafter acquired.

The financing statement relating to the meat processing operation contained the following collateral description:

All accounts receivable, inventory, furniture and fixtures, machinery and equipment now owned and hereafter acquired, including all replacements, substitutions, and additions thereto. It being the intention of the debtor to include herein all personal property now owned and hereafter acquired.

The financing statements were properly filed. When these financing statements were filed, Melbourne did not know of the jewelry and coins' existence.

In April of 1986 Melbourne grew concerned about Halberstadt's financial condition. It requested additional collateral to secure the Halberstadts' obligations. On April 15, 1986, Halberstadt took some of his and his wife's jewelry and delivered it to Melbourne. He executed an eight-page document describing the collateral and pledging it to the loans held by Melbourne. Halberstadt's wife knew and consented to this action. Melbourne did not prepare a financing statement covering this new collateral; instead, it took possession of the property.

On June 6, 1986, a document entitled Agreement for Public Auction was executed between Halberstadt as owner of the jewelry and Tim Rhodes as auctioneer. A representative of Melbourne also signed the agreement as the designated agent or clerk of the auctioneer; the agreement provided the clerk was an independent contractor. The auction was set for July 19, 1986. The property was delivered by Halberstadt to Rhodes on July 18, 1986.

Merchants, in the meantime, had also grown concerned about Halberstadt's financial position. It discovered the jewelry in June and inquired of Melbourne whether it had a security interest in the property. Melbourne informed Merchants it relied on its UCC filings, but made no mention of the pledge. Halberstadt, meanwhile, informed Merchants several times it would receive the proceeds of the sale. On June 16, 1986, Merchants filed the present action seeking

recovery on the promissory note executed by John and guaranteed by his wife.

On July 17, 1986, Merchants obtained a writ of attachment, which was executed at the Holiday Inn on July 18, 1986. The jewelry was in the possession of Mr. Rhodes, who was preparing it for auction. Melbourne then intervened to claim the jewelry.

The district court found Merchants' attachment lien was superior to Melbourne's interest. The court determined that the three prior security agreements executed by Halberstadt did not cover the jewelry. They were intended to cover personal property used in the meat processing and farming operations.

The court determined that Melbourne perfected its security interest in the jewelry by taking possession. It also found Melbourne's interest became unperfected upon delivering the property to Rhodes. This finding was based on the court's determination that Rhodes, by virtue of the auction agreement, was the agent of Halberstadt and not Melbourne. The court concluded Melbourne was not a party to the agreement but simply designated as the auction clerk to serve as an independent contractor. The court then reasoned that once Melbourne relinquished possession, it had no security interest in the property and Merchants' attachment lien was superior.

We review this matter for the correction of errors at law. Iowa R.App.P. 4. The fact findings of the trial court are binding on appeal if supported by substantial evidence. Iowa R.App.P. 14(f)(1). The issue we must determine is whether the trial court erred in determining which creditor had priority.

Melbourne advances two arguments in support of its appeal: (1) that it had a perfected security interest in the jewelry because it had possession, and this interest remained perfected because Rhodes was its bailee; and (2) that, even if Rhodes was not its bailee, the security interest remained perfected by virtue of the three prior financing statements and the pledge agreement.

 We conclude the district court was correct in finding there was no bailment between Melbourne and Rhodes. A security interest in goods can be perfected by taking possession of the goods. Iowa Code § 554.9305 (1985). The security interest is perfected from the time of possession "and continues only so long as possession is retained...." *Id.* If the goods, other than those covered by a negotiable document, are held by a bailee, "the secured party is deemed to have possession from the time the bailee receives a notification of the secured party's interest." *Id.* The secured party's agent or bailee, however, cannot be the debtor or a person controlled by the debtor. Iowa Code § 554.9305 Uniform Commercial Code Comment 2.

In this case, Melbourne took possession of the jewelry in order to perfect its security interest. There is no doubt Halberstadt could pledge his jewelry since he was the owner. There also is no doubt he could pledge his wife's jewelry since she consented to and authorized the transfer, thereby giving Halberstadt "rights in the collateral." *See* Iowa Code § 554.9105(1)(d) (1985) (debtor is someone who has rights in the collateral); *General Motors Acceptance Corp. v. Washington Trust Co.,* 120 R.I. 197, 386 A.2d 1096, 1098–99 (1978); *K.N.C. Wholesale, Inc. v. AWMCO, Inc.,* 56 Cal.App.3d 315, 318–19, 128 Cal.Rptr. 345, 348 (1976). We also conclude Melbourne's security interest was attached. *See* Iowa Code § 554.9203 (1985) (requirements for attachment).

 Since Melbourne had possession of the jewelry, its security interest was perfected. Melbourne's security interest, however, became unperfected when they relinquished the possession of the jewelry to Rhodes. Rhodes, by virtue of the auction agreement, was an agent of Halberstadt's and could not serve as the agent or bailee of Melbourne. This finding is further bolstered by Rhodes' testimony that he was not Melbourne's agent, but Halberstadt's. Because Melbourne relinquished possession, its security interest became unperfected, and it lost priority to Merchants, who

became a lien creditor by attaching the jewelry. *See* Iowa Code § 554.9301(1) and (3) (1985) (an unperfected security interest is subordinate to rights of a person who becomes a lien creditor by attachment before the security interest was perfected).

Melbourne argues even if its security interest became unperfected by relinquishing possession, it still had a perfected security interest in the jewelry by virtue of the pledge agreement and the three prior financing statements. Melbourne argues the financing statements' collateral descriptions were sufficient to put creditors on notice that Halberstadt's personal property was subject to a security interest.

■■■ To perfect most security interests in Iowa, a financing statement must be filed. Iowa Code § 554.9302 (1985). The financing statement is sufficient if it contains the names and mailing addresses of the debtor and secured party, "a statement indicating the types, or describing the items, of collateral," and is signed by the debtor. Iowa Code § 554.9402(1) (1985). The purpose of the financing statement is to give public notice to other creditors that a security interest is claimed in the debtor's collateral. *First State Bank v. Shirley Ag Serv., Inc.*, 417 N.W.2d 448, 451 (Iowa 1987); *In re Bollinger Corp.*, 614 F.2d 924, 926 (3d Cir.1980). Because the financing statement is designed to warn subsequent creditors rather than to identify the collateral, the collateral need not be specified but may be described by "type." *See Thorp Comm. Corp. v. Northgate Indus., Inc.*, 654 F.2d 1245, 1249 (8th Cir.1981); Iowa Code § 554.9402(1) Uniform Commercial Code Comment 2 ("The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs."). Iowa Code section 554.9110 states that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." "The test of the sufficiency of a description is that the description does the job assigned to it—that it makes possible the identification of the thing de-

scribed." *First State Bank of Nora Springs v. Waychus*, 183 N.W.2d 728, 730 (Iowa 1971). A financing statement that substantially complies with the requirements of [554.9402] is effective even though it contains minor errors which are not seriously misleading. Iowa Code § 554.9402(8) (1985).

We must determine whether the language "it being the intention of the debtor to include herein all personal property now owned or hereafter acquired" is sufficient to put subsequent creditors on notice. We hold it is not.

The courts have split on whether this type of description in a financing statement is sufficient to impart constructive notice and prompt further inquiry. The courts that hold it is sufficient find the purpose of the financing statement only requires creditors be put on notice. *In re Boogie Enters., Inc.*, 79 B.R. 4, 8 (C.D.Cal.1987). *In re JCM Coop., Inc.*, 8 U.C.C.Rep.Serv. 247, 251 (W.D.Mich.1970). The courts that hold it insufficient, find such a supergeneric description does not describe the collateral by type or item as required by section 9–402(1). *Matter of H.L. Bennett Co.*, 588 F.2d 389, 391 (3d Cir.1978); *In re Fuqua*, 461 F.2d 1186, 1188 (10th Cir.1972); *In re I.A. Durbin, Inc.*, 46 B.R. 595, 600 (S.D. Fla.1985); *In re DeSchamp*, 44 B.R. 517, 521 (N.D.Iowa 1984); *World Wide Tracers, Inc. v. Metro. Protection, Inc.*, 373 N.W.2d 839, 842 (Minn.App.1985).

■■■ We agree with the latter view. An overly broad description tells a subsequent creditor little, if anything, about the type or item of property secured. We agree that a detailed identification of the collateral covered is not required in a financing statement; requiring a detailed statement of collateral would be unduly burdensome. Article 9 contains several categories of personal property and gives the secured creditor the option to describe the collateral specifically by item or broadly by type. To allow supergeneric descriptions such as "all personal property" would circumvent the plain meaning of section 554.9402(1).

Applying this rationale, it is clear that Melbourne's financing statement was over-

ly broad in describing Halberstadt's personal property. The description in the financing statement gave no indication as to what property was being secured. It certainly is insufficient to alert a creditor that property owned by Mrs. Halberstadt was included. In fact, Mrs. Halberstadt did not sign the financing statement. *See* Iowa Code § 554.9402(1) (1985) (debtor must sign financing statement) and Iowa Code § 554.9105(1)(d) (1985) (where debtor and owner of collateral are not the same person, debtor means owner of the collateral). We therefore hold Melbourne's financing statement only perfected the property related to the meat processing and farming operations and not the coins and jewelry.

Because there was no bailor-bailee relationship between Melbourne and Rhodes, and since Melbourne's prior financing statements did not perfect a security interest in the coins and jewelry, the district court was correct in finding that Melbourne's unperfected security interest was subordinate to the interest acquired by Merchants when it attached the property. The judgment of the district court is affirmed.

AFFIRMED.