**PLEASANT VIEW FARMS, INCORPORATED, a Montana corporation, and Darold Tomsheck, Plaintiffs and Appellants,**

**v.**

**LeRoy N. NESS, and the United States of America, acting through the Farmers Home Administration, Defendants and Appellees.**

**No. 16717.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 1990.

Decided May 9, 1990.

---

Timothy M. Engel of May, Adam, Gerdes & Thompson, Pierre, for plaintiffs and appellants.

Michael E. Sebastian, Kimball, for defendant and appellee LeRoy N. Ness.

Philip N. Hogen, U.S. Atty., Sioux Falls, for defendant and appellee United States of America acting through the Farmers Home Admin.

SABERS, Justice.

Pleasant View Farms (Pleasant View) claims the trial court erred when it concluded that LeRoy Ness had sufficient rights in twenty-five calves to allow the security interest of Farmers Home Administration (FmHA) to attach thereto.

### Facts

In the fall of 1985, Darold Tomsheck, an officer of Pleasant View, reached an agreement with Ness whereby Ness would provide the care and feeding of certain livestock belonging to Pleasant View * in exchange for the entire 1986 calf crop. Although no written contract was ever executed by the parties, the trial court found that the oral agreement provided:

> Ness was to be liable for all death loss, from any cause whatsoever, exceeding two percent of the number delivered by Tomsheck. Ness was to compensate Pleasant View ... for any and all death loss exceeding said two percent by replacing said death losses with heifer calves of Tomsheck's choosing from the 1986 calf crop.

During April 1986, a severe blizzard killed fifty-one of the heifer cows. The surviving herd produced twenty-five calves.

Prior to the agreement with Pleasant View, Ness granted FmHA a security interest in his presently owned and after-acquired livestock. FmHA perfected its security interest in Ness' livestock by filing financing statements.

The trial court concluded that Pleasant View was entitled to all twenty-five calves

---

* We note that some of the livestock belonged to Tomsheck personally, and they are included in our references to Pleasant View's livestock.

pursuant to the death loss provision of the agreement. However, the court concluded that Ness' rights in the twenty-five calves were sufficient to enable the security interest of FmHA to attach to the calves. Consequently, FmHA's perfected security interest in the calves took priority over the interest of Pleasant View. Pleasant View appeals the decision giving FmHA priority over the calves. We affirm.

*Ness had rights in the collateral sufficient for a security interest to attach.*

■ Before a security interest may attach to collateral, the debtor must have rights in the collateral. SDCL 57A–9–203(1). Full ownership by the debtor is not necessary, but the security interest will attach to the collateral only to the extent of the debtor's rights in the collateral. 2 J. White and R. Summers, *Uniform Commercial Code* § 24–6 at 322–3 (3d ed. 1988); *see also* D. Epstein, J. Landers, and S. Nickles, *Debtors and Creditors* 223 (3d ed. 1987) ("When a debtor has rights in collateral, the security interest she creates is coextensive with her rights."). In that regard, mere possession of the collateral by the debtor is insufficient to enable a security interest to attach to the collateral. *Rohweder v. Aberdeen Prod. Credit Ass'n,* 765 F.2d 109 (8th Cir.1985); *cf. First Nat'l Bank in Pierre, S.D. v. Feeney,* 393 N.W.2d 458 (S.D.1986). Accordingly, "the security interest of a bailee's creditor does not attach to goods which are the subject of a bailment." *Rohweder, supra* at 112.

■ Although mere possession of collateral does not create sufficient rights in the collateral for a security interest to attach, the necessary rights, otherwise non-existent, may be created by means of estoppel. If the owner of collateral allows another to appear as the owner or to dispose of the collateral, such that a third party is led into dealing with the apparent owner as though he were the actual owner, then the owner will be estopped from asserting that the apparent owner did not have rights in the collateral. *In re Pubs, Inc.,* 618 F.2d 432 (7th Cir.1980).

■ FmHA does not claim that Pleasant View should be estopped from challenging Ness' rights in the collateral. As a result, FmHA's security interest will attach to the calves only to the extent of Ness' interest therein. Pleasant View claims that Ness held the calves pursuant to a bailment, resulting in insufficient rights for a security interest to attach. However, the oral agreement between Pleasant View and Ness, as found by the trial court, provides otherwise.

Under the agreement, Ness was "to keep the entire 1986 calf crop," but he was required to *"compensate"* Pleasant View out of the calf crop for any death loss to the original herd. This arrangement indicates that the calf crop belongs to Ness because Pleasant View could not be "compensated" with something it presently owned. In other words, a calf belonged to Ness from conception until it was selected as a death loss replacement. Therefore, Ness' ownership of the calf crop provided sufficient rights in the collateral to enable FmHA's security interest to attach.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I concur in the result of this opinion, I am dismayed at the dearth of facts recited. Although I concede that brevity is a legal virtue, rarely exhibited, this opinion does not delineate the factual scenario sufficiently to apprise the reader of the background in this case. Example being that Appellants were to place bred female Tarentaise cattle in Ness' care, on his ranch, and that Ness was to receive calves born to these bred females which were placed in his care, for providing care and feed.

We have a State Legislature in South Dakota. Convening once a year, it passes many laws. Not one citation to a state statute appears in the majority opinion, other than SDCL 57A–9–203(1). The United States of America in its brief cites eight

(8) specific statutes; Ness cites eight (8) specific statutes; Appellants cite the same statute set forth in the majority opinion. These statutes, at least part of them, have applicability to the total factual scenario, which has not been set forth. Furthermore, the two cited South Dakota cases, one decided in the Eighth Circuit Court of Appeals in 1985 and the *Feeney* case cited cry out for academic distinguishment.

Perhaps it should be mentioned that this case Appellant (Tomsheck's claims against Ness) were tried to the court and a jury. We have no procedural history recited in this opinion which would further tell us that a jury awarded money damages to Tomsheck and issued an advisory verdict on the existence of a "death loss" provision in the agreement between Tomsheck and Ness. Determinations were made by the trial court on the existence and enforceability regarding the "death loss." The trial court found there were two agreements between Tomsheck and Ness, determining that there was no death loss provision in the first agreement but did find that Tomsheck was entitled to 25 replacement animals in the second agreement. Procedurally, all the parties agreed that on the issue of a theoretical attachment of the FmHA's security interest, same was to be determined by the court. Essentially, the trial court determined, as a matter of law, that the FmHA's security interest, indeed, had attached, and that it was superior to Tomsheck's ownership interest.

Does the Uniform Commercial Code apply in this? If so, we should say so. To what extent does it apply? We should specify. Are we skirting the holding in *Feeney?* Or are we modifying it? The Bar deserves to know. There are six (6) Findings of Fact and six (6) Conclusions of Law, consisting of four (4) typewritten pages which are the trial court's work product. Are we finding them not clearly erroneous under *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (S.D. 1970)? Regarding the Conclusions of Law, are we holding that they are not mistakes of law under *Permann v. South Dakota Dept. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113 (S.D.1987)?

This decision deals justly with the litigants and therefore I join in its result. Truly, this case is typically appellate justice which will excite little public concern. My concern is that the facts are so few that it is extremely difficult to adopt a coherent analysis and appraisal of the principal issue created under the briefs. This case, because of our previous *Feeney* holding, has a substantive consequence to the settled law of this State. Fearing legal uncertainty arising from our decision herein, I am constrained to concur in result only.