FIRST NATIONAL BANK OF OMAHA,
a Nebraska corporation, Plaintiff
and Appellee,

v.

PLEASANT HOLLOW FARM, INC.,
Min–Go Partnership, Robert Woldt,
and Dennis Jacobson, Defendants,

and

Ceres, Inc. and Horace Seixas,
Defendants and
Appellants,

and

SVO Specialty Products, Inc., successor to
SVO Enterprises, a Division of the Lu-
brizol Corporation, Intervenor, Defen-
dant and Appellant.

Nos. 18751, 18752.

Supreme Court of South Dakota.

Argued Nov. 30, 1994.

Decided May 10, 1995.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for appellee First Nat. Bank of Omaha.

Mark R. Hanson of Nilles, Hansen & Davies, Ltd., Fargo, for appellants Ceres and Seixas.

Drew C. Johnson of Kolker, Fritz, Hogan & Johnson, Aberdeen, for appellant SVO.

MILLER, Chief Justice.

Appellants SVO Specialty Products, Inc. (SVO), Ceres, Inc. and Horace Seixas appeal the trial court's grant of summary judgment to Appellee First National Bank of Omaha (Bank). The central issue on appeal is appellants' assertion that Bank's perfected security interest is ineffective against their claimed superior ownership interests in certain crops. We affirm.

## FACTS

In January, 1991, Ceres, which acts as the agent of Seixas, contracted with Sigco Research Inc. to produce a crop of high oleic sunflowers. Sigco entered into this contract for the benefit of SVO, a company which markets sunflower oil and meal. Under the contract, Sigco agreed to advance money to Ceres for the payment of expenses incurred in growing the crop. Ceres agreed to deliver the crops to Sigco in exchange for a percentage of the profits from the sale of the crops, and Ceres granted Sigco a security interest in the growing crop to secure the repayment of advances, plus interest.

In February, 1991, in order to satisfy his contractual obligations with Sigco, Seixas contracted with Pleasant Hollow Farms, Inc. (Pleasant Hollow). Under this contract, Pleasant Hollow agreed to plant, raise and harvest 13,000 acres of high oleic sunflowers for Seixas. In turn, Seixas promised to reimburse Pleasant Hollow for crop production expenses as they were incurred and verified. Additionally, once the crops were sold, Pleasant Hollow would receive twenty-five percent of the difference between the income received from the sale minus the costs incurred for producing the crop. David Zehringer (Zehringer), president of Pleasant Hollow, negotiated and signed the contract on behalf of Pleasant Hollow. Some time in the spring of 1991, Seixas and Zehringer agreed to the assignment of Pleasant Hollows' rights and duties under the contract to Min–Go Farms (Min–Go), a partnership in which Zehringer is a partner.

Having received satisfactory results from the 1991 crop production agreement, Sigco and Ceres renewed the agreement for the production of a sunflower crop in 1992. Likewise, Seixas extended its contract with Min–Go for the 1992 production of sunflowers. Seixas also contracted with Min–Go for the production of safflowers and soybeans. In accordance with the contract between Seixas and Min–Go, Seixas reimbursed Min–Go for approximately $1,500,000.00 in farming expenses reported by Min–Go for the 1992 crop. Seixas never filed a financing statement in South Dakota's central filing system to perfect a security interest in any of the crops produced or the proceeds thereof.

To satisfy his 1992 crop production requirements with Seixas, Zehringer leased land from farms located in eastern and central South Dakota. These leases were not in Min–Go's name, but instead listed either Zehringer or Pleasant Hollow as the lessee. On April 4, 1992, Pleasant Hollow executed a sublease of 8,215 acres in South Dakota to Min–Go for the sum of $410,750.00, payable on or before April 15, 1992. On May 5, 1992, Pleasant Hollow executed a second sublease of 2,700 acres in South Dakota to Min–Go for the sum of $86,900.00, due upon the completion of the lease. Finally, in August 1992, Pleasant Hollow executed a sublease for 9,458 acres in South Dakota to Min–Go for $613,232.85. On all three leases, Zehringer was the sole signatory, signing as both the

president of Pleasant Hollow and as a partner in Min–Go. To secure performance, all three subleases granted Pleasant Hollow a security interest "in all crops of every kind which have been planted or are growing, or which may hereafter be planted or growing on the above-described land." None of these subleases were ever recorded with the register of deeds. Seixas received a copy of each of the subleases as verification of land lease expenses.

In the spring of 1992, Zehringer approached Bank about obtaining a loan for Pleasant Hollow. On May 14, 1992, Zehringer took Bank officials on a tour of his Minnesota farming operation. He also arranged for Bank officials to meet Seixas in North Dakota. According to Seixas, he met Bank officials for the purpose of explaining the work he did for Zehringer and the work Zehringer did for him. Seixas understood that Bank was considering a loan to Pleasant Hollow. Seixas informed Bank officials that he worked as a marketing consultant for Zehringer and that Zehringer farmed approximately 13,000 acres of sunflowers as well as some soybeans and safflowers for Seixas. Seixas does not recall whether he ever mentioned Min–Go to Bank officials, or the fact that Seixas contracted for crop production with Min–Go rather than with Pleasant Hollow or Zehringer individually. Later, Zehringer took Bank officials to Brookings, South Dakota, to observe farming operations in that area. Zehringer led the officials to believe that the property was leased and the crops were owned by Pleasant Hollow. In fact, this land was among the property Pleasant Hollow subleased to Min–Go, and the crops growing on the land were promised to Seixas under the crop production agreement between Seixas and Min–Go.

Bank checked the state filing system and determined there were no financing statements or other lien documents evidencing superior security interests in the crops at issue.* Consequently, on June 10, 1992, Bank agreed to loan the sum of $1,350,000.00 to Pleasant Hollow to finance its farming operations. The four officers of Pleasant Hollow, including Zehringer, also signed the loan agreement in their individual capacities. On August 21, 1994, this loan amount was increased to $1,500,000.00. To secure the loan, Bank and Pleasant Hollow executed a security agreement whereby Bank took a security interest in all crops grown in South Dakota by Pleasant Hollow. Bank filed a financing statement in South Dakota's central filing system to perfect this security interest. Unbeknownst to Bank, its security interest covered the same crops which Seixas claimed under his contract with Min–Go.

In October, 1992, Bank and Seixas became aware of the other's claims to the crops. Bank filed a claim for declaratory relief, requesting a determination that it held a valid, first security interest in all crops grown and in the proceeds thereof as described in the security agreements and financing statement. Seixas filed a counterclaim, alleging Bank had tortiously interfered with its contractual relationship with Min–Go and that Bank should be denied priority to the crops on the grounds of unjust enrichment.

The trial court ultimately granted summary judgment in favor of Bank. The court concluded that the flow of money from Sigco/SVO to Ceres/Seixas and on to Min-Go/Pleasant Hollow reflected lending relationships. Consequently, the court reasoned that to claim priority, Sigco, SVO, Ceres and Seixas should have perfected their interests in the crops once they attached. Furthermore, the court ruled that Pleasant Hollow or Zehringer had rights in the crops which allowed Bank's security interest to attach and later gain priority upon perfection. The trial court rejected Seixas' tortious interference claim on the grounds that Bank had no notice of any specific claim against the crops pledged by Pleasant Hollow. Similarly, the trial court rejected the claim of unjust enrichment, noting that any benefit derived by Bank was the result of observance of statutory procedures to perfect its security interest in the crops.

SVO, Ceres, and Seixas appeal. We affirm.

---

* While another lending institution had a lien on certain South Dakota crops, Bank arranged to obtain that lien as part of its financing arrangement with Pleasant Hollow.

## DECISION

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT THE BANK HAD A VALID FIRST SECURITY INTEREST IN THE CROPS UNDER DISPUTE AND THE PROCEEDS THEREOF.

■ To claim a valid, perfected security interest in collateral, the security interest must attach to the collateral. A security interest attaches when (1) there is an agreement that it attach; (2) value has been given by the secured party; and (3) the debtor has rights in the collateral. SDCL 57A–9–203; *Brown v. United States ex rel. FHA*, 622 F.Supp. 1047, 1048 (D.S.D.1985). Appellants argue that Bank's security interest did not attach because Pleasant Hollow had no rights in the crops at the time it entered into the loan and security agreements with Bank. Appellants contend that Seixas owned the crops in question. They emphasize a provision in the agreement between Pleasant Hollow and Seixas which was later extended by letter to Seixas' contract with Min–Go. This provision provides: "The growing Crop and Crop supplies shall at all times remain the property of [Seixas] and [Min–Go] will not encumber, alienate, sell, assign or transfer the crop except as provided in this Agreement."

■ Chapter 57A–9 of the South Dakota Code governs secured transactions in this state. SDCL 57A–9–202 provides: "Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." This provision is intended to prevent circumvention of the Uniform Commercial Code through manipulation of the locus of title. *See James Talcott, Inc. v. Franklin Nat. Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775, 781 (1972). Therefore, "formal title is not a prerequisite for the attachment of a security interest." *Proceedings for Deposit in Court of Monies*, 417 N.W.2d 187, 188 (S.D.1987).

■ Our cases demonstrate that control over the collateral, rather than record ownership, is the key factor in determining a debt-

or's rights in collateral. In *Proceedings for Deposit*, we wrote:

'Even if a party retains ownership interest in a piece of collateral, a debtor who retains that collateral is still able to mislead potential creditors by exercising his "rights" of possession and control over the collateral. It is the outward appearance of a *debtor's* rights of ownership and control in the collateral that determines whether attachment of a security interest is effective and not the right of a party who may have title to the collateral.'

*Id.* at 188 (quoting *Brown v. United States*, 622 F.Supp. 1047, 1050 (D.S.D.1985)) (emphasis in original). Similarly, in *Pleasant View Farms, Inc. v. Ness*, 455 N.W.2d 602 (S.D. 1990), we held:

If the owner of collateral allows another to appear as the owner or to dispose of the collateral, such that a third party is led into dealing with the apparent owner as though he were the actual owner, then the owner will be estopped from asserting that the apparent owner did not have rights in the collateral.

*Id.* at 604 (citing *In re Pubs, Inc.*, 618 F.2d 432 (7th Cir.1980)).

■ Through Min–Go, Seixas allowed Pleasant Hollow to exercise such control over the crops as to create rights in the collateral to which Bank's security interest could attach. Evidence indicates that Seixas gave Min–Go complete discretion regarding the actual raising of the crops, as Seixas was out of state and did not attempt to familiarize himself with the specific farming locations until August, 1992. In turn, Min–Go allowed Pleasant Hollow significant control over the crop. According to an officer/shareholder in Pleasant Hollow, Pleasant Hollow equipment and employees were used to plant and grow the crops in question. Indeed, an individual employed by Pleasant Hollow to oversee production of the disputed crops in eastern South Dakota testified that he was not even aware of Min–Go's alleged involvement in the farming enterprise until October, 1992, when Seixas stepped forward to contest Bank's interest. Although the agreement between Seixas and Min–Go required that all land leases be in Seixas' name or assigned to him,

Seixas allowed the subleases between Pleasant Hollow and Min–Go to stand. These subleases granted Pleasant Hollow a security interest in all crops grown on the relevant real estate; yet the record fails to show that these interests were ever extinguished. While witnesses testified to "loans" from Min–Go to Pleasant Hollow, these transactions do not establish that Min–Go's obligations under the subleases were satisfied.

■ Additionally, there was no showing that, before taking a security interest in the crops, Bank was apprised of Seixas' interest in the specific property pledged by Pleasant Hollow or could have reasonably discovered that interest. Because none of the appellants filed a financing statement to perfect their interest in the crops, Bank's search of the filing system revealed that the crops were not encumbered by prior, perfected security interests. Similarly, the subleases between Pleasant Hollow and Min–Go were never recorded with the register of deeds, so these documents would not have been discovered in a records search. Further, Zehringer only supplied Bank with the original leases between Pleasant Hollow and the original landowners. Since these landowners were never notified of the subleasing by Pleasant Hollow to Min–Go, any inquiries directed at them would not have revealed Min–Go's involvement in the crop production.

Although Seixas personally met with Bank officials while they contemplated making a loan to Pleasant Hollow, Seixas never informed them of his interest in specific collateral offered to the Bank or his contractual relationship with Min–Go rather than Pleasant Hollow. His general statements that Zehringer farmed some property for him were not sufficient to warn Bank of his interest in the property pledged by Pleasant Hollow and may have inadvertently misled Bank officials as to the breadth of Pleasant Hollow's farming activities and its financial stability.

Appellants SVO, Ceres, and Seixas could have easily negated Pleasant Hollow's claim of rights in the collateral by filing financing statements evidencing their interest in the crops located on the various parcels of real estate. Although appellants argue they did not hold a security interest, we disagree. A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." SDCL 57A–1–201(37). Appellants operated as financiers of the operation by advancing money for crop production costs and charging interest for the use of this money. As security for these advances, appellants claimed an ownership interest in the crops. Appellants intended to sell the crops in order to receive repayment of the advances, plus interest, and to realize a profit on the sale.

By neglecting to file a financing statement evidencing their interest in the crops, appellants failed to perfect their security interest. In contrast, Bank filed a valid financing statement and thereby perfected its interest in the crops. SDCL 57A–9–302. In a priority battle, the secured creditor who holds a perfected interest prevails over a secured creditor who has failed to perfect his interest. SDCL 57A–9–312. Consequently, Bank has priority over appellants' claim to the collateral and proceeds.

Additionally, it has been asserted on appeal that the trial court erred in holding as a matter of law that Bank did not tortiously interfere with the business relationship between Seixas and Min–Go/Pleasant Hollow Farms and in dismissing Seixas' counterclaim for unjust enrichment. We have considered those claims and find them to be totally lacking in merit.

Affirmed.

SABERS, AMUNDSON and KONENKAMP, JJ., and WUEST, Retired Justice, concur.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.