2001 SD 113

**KWONGYUEN HANGKEE COMPANY, LTD., Petitioner and Appellee,**

v.

**STARR FIREWORKS, INC., a/k/a Starr Fireworks, Respondent and Appellant.**

No. 21674.

Supreme Court of South Dakota.

Argued April 25, 2001.

Decided Aug. 29, 2001.

Ronald A. Parsons, Jr., Scott N. Heidepriem of Johnson, Heidepriem, Miner, Marlow and Janklow, and Marc W. Tobias, Sioux Falls, SD, Attorneys for petitioner and appellee.

Erich K. Johnke, Timothy L. James of James & Associates, Yankton, SD, Attorneys for respondent and appellant.

MILLER, Chief Justice.

[¶ 1.]   Starr Fireworks appeals the circuit court's decision to recognize and enforce a Hong Kong judgment. We hold that the Hong Kong judgment is recognizable and enforceable under the doctrine of comity.

**FACTS**

[¶ 2.]   Kwongyuen Hangkee Company, Limited, sued Starr Fireworks in the High Court of the Hong Kong Special Administrative Region, Court of First Instance for failure to pay for shipments of fireworks sent from December 1991 through March 1992. Although the dispute arose while Hong Kong was a sovereign under the British Crown, Hangkee filed suit after Hong Kong had reverted to communist Chinese rule. Starr Fireworks retained counsel in Hong Kong to defend against the claim.

[¶ 3.]   Before the hearing in the Hong Kong tribunal, the chief witness, Mr. Sam Lau, who was the director of Hangkee in Seattle, Washington and Starr's sole contact with Hangkee, died in a murder/suicide. Without the testimony of Mr. Lau, who had extensive knowledge of the dispute between his company and Starr, the majority of the evidence the Hong Kong tribunal received was in the form of affidavits. Based on the affidavits, the Hong Kong tribunal awarded Hangkee

$98,438.45 plus interest on June 14, 1999. Starr did not appeal this decision.

[¶ 4.] In April 2000, Hangkee attempted to enforce the Hong Kong judgment in South Dakota through a Petition for Registration and Enforcement of Foreign Judgments. Starr's motion to strike the petition was denied. The trial court decided to recognize and enforce the judgment in South Dakota based on the common-law doctrine of international comity. Starr appeals.

## STANDARD OF REVIEW

[¶ 5.] This is a case of first impression in South Dakota. This Court has never considered whether to recognize and enforce a judgment obtained in a foreign nation. It presents a question of law, which is reviewed de novo.

## DECISION

[¶ 6.] 1. **The common-law doctrine of comity applies to foreign nation judgments.**

[¶ 7.] This Court has long recognized the doctrine of comity in the area of sister state judgments. *Knittle v. Ellenbusch*, 38 S.D. 22, 159 N.W. 893 (1916) (Nebraska bulk sale law); *Emerson–Brantingham Imp. Co. v. Ainslie*, 38 S.D. 472, 161 N.W. 1001 (1917) (Wyoming mortgage). In 1975, SDCL chapter 15–16A, "Enforcement of Foreign Judgments," codified the full faith and credit between sister states demanded by Article IV of the United States Constitution and the comity principles it embodies. Hangkee now urges this Court to extend the common-law doctrine of comity to the judgment of a foreign nation. South Dakota has no statutes that address the recognition and enforcement of a foreign nation judgment, thus the rules of the common-law are in force. SDCL 1–1–24.

[¶ 8.] The United States Supreme Court has recognized comity as:

The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.' Although the phrase has been often criticized, no satisfactory substitute has been suggested.

'Comity,' in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95, 108 (1895). We further quoted the *Hilton* court's specification of requirements, which must precede the application of the doctrine of comity:

[W]e are satisfied that where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect,

the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Hilton*, 159 U.S. at 202–03, 16 S.Ct. at 158, 40 L.Ed. at 122. These conditions have developed into four factors courts consider when deciding whether to enforce and recognize a foreign nation judgment. *Id.* The four factors are:

(1) the foreign court actually had jurisdiction over both the subject matter and the parties;

(2) the decree was not obtained fraudulently;

(3) the decree was rendered by a system of law reasonably assuring the requisites of an impartial administration of justice—due notice and a hearing; and

(4) the judgment did not contravene the public policy of the jurisdiction in which it is relied upon.

*Id.*

[¶ 9.] Additionally, we note that thirty-one jurisdictions to date have adopted the Uniform Foreign Money–Judgment Recognition Act, which is a codification of the common-law doctrine of comity applied to foreign nation money judgments. Unif. For. Money–Judgm. Recognition Act, 13 ULA 89 (Supp 2000) (Table of Jurisdictions Wherein Act Has Been Adopted). Furthermore, states where the uniform act is not codified employ the principles of comity when deciding whether to enforce the judgment of a foreign nation. *Mississippi Department of Human Svcs. v. Shelnut*, 772 So.2d 1041 (Miss.2000) (recognizing that state law and the principles of comity govern the enforcement of a foreign judgment); *Davidson & Co., Ltd. v. Allen*, 89 Nev. 126, 508 P.2d 6 (1973) (utilizing the principles of comity involving an attempt to enforce Canadian default judg-ment in Nevada). In the absence of statutory guidance by the South Dakota Legislature, we are persuaded that we should employ the doctrine of comity to determine whether to enforce a foreign nation judgment.

### [¶ 10.] 2. The Hong Kong judgment is recognizable and enforceable.

[¶ 11.] Under the first factor, Starr argues that no evidence exists indicating that the Hong Kong tribunal had subject matter jurisdiction and personal jurisdiction over Starr. As Hangkee points out, this ignores the facts of this case. We previously noted that Starr retained Hong Kong counsel in order to defend the action. According to Hangkee, Starr raised the jurisdictional claim to the Hong Kong tribunal, which rejected it. Starr does not deny this. Furthermore, Starr fully participated in the Hong Kong proceedings including a hearing and submission of evidence. Starr did not appeal the Hong Kong tribunal's jurisdictional decision or its judgment in favor of Hangkee. Furthermore, the evidence indicates that the High Court of the Hong Kong Special Administrative Region, Court of First Instance, has unlimited civil and criminal jurisdiction and applies both common-law and equity. PETER WESLEY-SMITH, AN INTRODUCTION TO THE HONG KONG LEGAL SYSTEM 69 (Oxford Univ. Press, 3d ed., 1998).

[¶ 12.] The second factor requires this Court to examine whether the judgment was obtained fraudulently. The evidence does not indicate any fraud. Hangkee sued Starr on its delinquent account and provided invoices, among other evidence, as proof. Most importantly, Starr specifically agrees the judgment was not obtained fraudulently and thus no further analysis is needed.

[¶ 13.] The third factor inquires whether the foreign system of law reasonably provides for the impartial administration of justice. As noted under the first factor, Starr fully participated in a hearing before the Hong Kong tribunal after due notice, which is contained in this record. Additionally, the Hong Kong system of law follows English legal procedure, which courts have accepted as comporting with due process rights. *Manches & Co. v. Gilbey*, 419 Mass. 414, 646 N.E.2d 86, 87 (1995); *Dart v. Dart*, 224 Mich.App. 146, 568 N.W.2d 353, 358 (1997). Although Hong Kong reverted to communist Chinese rule in 1997, Starr's attempt to cast doubt on Hong Kong's system of law fails for two reasons under the undisputed facts of this case.

[¶ 14.] First, Starr was given due notice and fully participated in the Hong Kong legal proceeding and did not appeal from the adverse judgment. Its argument that Hong Kong does not provide impartial administration of justice, based on legal commentators' arguments, is without merit. Starr fully participated in the Hong Kong legal proceedings, suffered an adverse judgment, did not appeal and now alleges the Hong Kong system of law is dubious. This directly contradicts the fact that Starr was provided with due notice and a full opportunity to develop its case at a hearing.

[¶ 15.] Second, regardless of Hong Kong's reversion to communist Chinese rule, China agreed that it would not affect Hong Kong's capitalist way of life, including its English system of law, for fifty years. Besides legal commentators' opinions, Starr offers no substantive evidence to show that Hong Kong's system of law fails to provide for the impartial administration of justice. In fact, all the evidence indicates that the Hong Kong tribunal did provide for the impartial administration of justice in this case.

[¶ 16.] The last factor examines whether the judgment contravenes the public policy of the forum asked to enforce it. Hangkee points out that collection of a delinquent bill does not contravene any public policy of South Dakota. We agree.

[¶ 17.] Affirmed.

[¶ 18.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.