#30621-a-SRJ
**2024 S.D. 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CAL SD, LLC,                                          Plaintiff and Appellee,

    v.

INTERWEST LEASING, LLC,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CRAIG A. PFEIFLE
Retired Judge

* * * *

JOHN W. BURKE of
Thomas Braun Bernard & Burke, LLP
Rapid City, South Dakota                     Attorneys for defendant
                                             and appellant.


ROBERT J. GALBRAITH of
Nooney & Solay, LLP
Rapid City, South Dakota                     Attorneys for plaintiff
                                             and appellee.

* * * *

ARGUED
NOVEMBER 6, 2024
OPINION FILED **12/11/24**

#30621

JENSEN, Chief Justice

[¶1.] Chris Welsh, on behalf of CAL SD, LLC, entered into a purchase agreement with Interwest Leasing, LLC to buy commercial real estate. CAL SD made an earnest money deposit of $30,000 per the terms of the purchase agreement. Prior to closing, Welsh passed away and CAL SD refused to close. Interwest found another buyer and sold the property for the same price but refused to return the earnest money deposit. Subsequently, CAL SD filed a declaratory judgment action seeking return of the $30,000, claiming the purchase agreement was cancelled because of CAL SD's inability to obtain financing. The circuit court determined the declaratory judgment was a breach of contract action at law and set the claim for jury trial, over the objection of Interwest. A jury found for CAL SD and the circuit court entered a judgment directing the earnest money deposit be returned to CAL SD. Interwest appeals, arguing the action was equitable and the circuit court erred in submitting the claim for a binding jury determination. Interwest also claims the court submitted erroneous instructions to the jury. We affirm.

**Factual and Procedural Background**

[¶2.] Welsh entered into a commercial real estate purchase agreement (Purchase Agreement) with Interwest on February 6, 2021. The Purchase Agreement provided for "Chris A. Welsh or Assigns" to purchase a commercial building located at 1810 Rand Road in Rapid City, South Dakota, for $500,000 with an earnest money deposit of $30,000. A 1031 exchange company holding funds for CAL SD deposited the earnest money with Keller Williams Realty, the listing agent

-1-

for Interwest. The Purchase Agreement was subject to contingencies, including the purchaser obtaining financing.

[¶3.]    On February 9, 2021, Welsh and Interwest executed an addendum to the Purchase Agreement, changing the purchaser from Welsh to CAL SD, a company managed by Welsh. CAL SD was wholly owned by CAL Heavenly, LLC, which in turn was owned by three trusts, one of which was Welsh's. On March 10, 2021, CAL SD and Interwest executed a second addendum agreeing that the closing agent, First American Title Company, would hold the escrow funds deposit.

[¶4.]    Welsh unexpectedly passed away on March 15, 2021, less than a month from the closing date of April 6, 2021. Subsequently, Welsh's long-time companion, Tina Roberts, began communicating with Chris Long, the real estate agent handling the transaction for Interwest. Unaware of the details of the proposed sale, Roberts requested the closing date be extended and sought information regarding the purchase of the subject property. Interwest provided Roberts with all the information pertaining to the transaction and offered a 12-day extension of the closing date, changing it from April 6 to April 19, 2021. Roberts agreed to the extension and did not request additional time to close. Although Roberts was not, at the time, authorized to act on behalf of CAL SD, she executed the addendum to the Purchase Agreement extending the closing date to April 19.

[¶5.]    On April 9, 2021, Long received a phone call from Welsh's attorney stating CAL SD was unable to close. There was no discussion during this call about CAL SD's ability to secure financing or extending the closing date beyond April 19. Based upon this phone call, Long forwarded a cancellation agreement to CAL SD,

which included a provision directing the $30,000 earnest money deposit to be paid to Interwest. CAL SD declined to sign the cancellation agreement and sent a letter to Long on April 21, 2021, stating that the Purchase Agreement was cancelled because CAL SD had been unable to obtain financing. Interwest subsequently sold the property to a third party, 412 Investment Group, LLC, for the same price. Interwest did not make any claim for damages or loss associated with the subsequent sale to 412 Investment. However, the earnest money deposit was not returned to CAL SD.

[¶6.] CAL SD filed a complaint for declaratory judgment against Interwest and 412 Investment on October 15, 2021. CAL SD's complaint sought cancellation of the Purchase Agreement with Interwest and return of the earnest money deposit. The complaint included a jury demand. Interwest and 412 Investment filed separate answers. In its answer, Interwest asserted affirmative defenses of waiver, estoppel, and unclean hands, but did not request a jury trial. Sometime later, Interwest filed a third-party complaint against Roberts for fraud, amongst other claims, arising from her representations and actions on behalf of CAL SD without authority. The claims against 412 Investment and Roberts were later dismissed by the parties.

[¶7.] Interwest moved for partial summary judgment seeking a determination "that, as a matter of law, the plain language of the [P]urchase [A]greement entitles Defendant Interwest Leasing to retain the $30,000 earnest money deposit." CAL SD filed a cross-motion for summary judgment arguing that Interwest's efforts to retain the earnest money deposit, even if CAL SD had

breached the Purchase Agreement, would amount to an unlawful penalty or forfeiture under South Dakota law. The circuit court denied CAL SD's motion and granted Interwest's motion, in part, determining that "the earnest money provision in the [Purchase Agreement] is a valid liquidated damages clause." The court denied the remainder of Interwest's motion, determining that genuine issues of material fact remained concerning the contract contingencies and CAL SD's request for the return of the earnest money deposit.

[¶8.]     Before the scheduled pretrial conference, the parties submitted proposed jury instructions. Amongst the instructions Interwest proposed, one of them requested the jury to determine "[w]hether Plaintiff [CAL] SD, LLC acted in good faith and used its best efforts to secure financing but was unable to do so." The instruction included the evidentiary standard of greater convincing force of the evidence. Interwest's proposed jury instructions also included breach of contract language and contained a jury verdict form.

[¶9.]     CAL SD argued at the pretrial conference that the jury must consider the question of whether there was a breach of contract. Interwest asserted the question was narrower, whether CAL SD made a good faith effort to secure financing, permitting them to cancel the Purchase Agreement. Interwest claimed these issues, and the relief sought, were equitable and therefore no jury instructions would be necessary or appropriate. CAL SD responded, "[t]he issue before the jury in the dec[laratory] action is whether or not my client breached the contract[]" and that determination "is a fact question for the jury." The circuit court agreed with CAL SD, determining the question for the jury was "whether or not there's a

-4-

breach." Counsel for Interwest replied, "Okay. I thought I should ask because of it being a dec[laratory] action and I didn't know if it was more in the form of an advisory jury or not."

[¶10.]     Prior to the commencement of trial, Interwest made the following objection:

> Just so that the issue is not waived, given that it's a declaratory judgment action and the relief is almost equitable in nature to sort of like rescind the contract or have it void, I would simply object to it being a jury trial as opposed to a court trial.

The circuit court overruled the objection. The claim for declaratory relief was presented to the jury for a binding verdict and the jury returned a verdict finding in favor of CAL SD. Based upon the jury verdict, the circuit court entered a judgment "that [CAL SD] shall be entitled to the earnest money held under the [Purchase Agreement.]" The court did not enter separate findings of fact and conclusions of law.

[¶11.]     Interwest appeals, arguing that the circuit court erred in concluding that the declaratory judgment action was a claim at law rather than an equitable claim.[1]

---

1.     Interwest also argues because CAL SD was seeking equitable relief, the circuit court erred by submitting the claim for a binding verdict. Interwest also claims that the court erred in failing to instruct on the higher burden of proof for an equitable claim and in refusing to instruct on its equitable defenses of estoppel and unclean hands. Based upon our determination that CAL SD's claim was a claim at law, it is unnecessary to address the remaining issues.

### Analysis

[¶12.]     The determination of whether the declaratory action was legal or equitable is a question of law.  "This Court reviews questions of law under the de novo standard with no deference afforded the circuit court's decision."  *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 12, 709 N.W.2d 824, 830 (citing *Block v. Drake*, 2004 S.D. 72, ¶ 8, 681 N.W.2d 460, 463).

> **1.     *Whether the request for declaratory judgment was a legal or equitable claim.***

[¶13.]     Interwest argues that CAL SD's claim for declaratory judgment was a claim in equity.  As a result, Interwest asserts that the circuit court abused its discretion by submitting the claim to the jury for a binding verdict.  *Granite Buick GMC, Inc. v. Ray*, 2014 S.D. 78, ¶ 7, 856 N.W.2d 799, 802 ("But unless the parties agree to a binding jury in an equitable action, the jury verdict is advisory.").

[¶14.]     Interwest cites SDCL chapter 21-12 and SDCL 21-13-1[2] in support of its argument that CAL SD sought to have the Purchase Agreement declared void or cancelled, and the earnest money deposit returned, which was an action for equitable rescission.  Interwest maintains that SDCL 21-13-1 is a codification of the common law and is "declaratory of the jurisdiction which courts of equity exercise

---

2.     SDCL 21-13-1 provides:

> A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may upon his application, be so adjudged and ordered to be delivered up or canceled; but if the invalidity is apparent upon its face or upon the face of another instrument necessary to its use in evidence it is not deemed capable of causing such injury.

upon the principle of quia timet."[3] *Nat'l Benefit Ass'n v. Eidy*, 70 S.D. 79, 85, 14 N.W.2d 883, 885 (1944). Interwest further points to Roberts' testimony at trial, stating that she was willing to follow through with the property purchase after it had already been sold, to support its claim that the Purchase Agreement had not yet been rescinded or cancelled. Interwest cites *First Nat'l Bank of Philip v. Temple*, 2002 S.D. 36, ¶ 11, 642 N.W.2d 197, 201, that "declaratory relief *per se* is neither legal nor equitable."

[¶15.]     CAL SD responds that it was entitled to a jury trial pursuant to South Dakota Constitution Article VI, § 6, which guarantees a right to a jury trial in all "cases at law." *See also* SDCL 15-6-38(a) ("The right of trial by jury as declared by S.D. Const., Art. VI, § 6 or as given by a statute of South Dakota shall be preserved to the parties inviolate."). CAL SD argues that the fundamental issue in the case involved the question of "whether [CAL] SD breached its obligation under the Purchase Agreement by failing to make a good faith effort to secure financing."

---

3.     Quia timet is an equitable remedy most often used in the context of surety contracts to prevent future probable harm to the surety. As explained in *Williston on Contracts*:

> Quia timet is the right of a surety to demand that the principal place the surety in funds when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor. . . . The theory of quia timet allows the surety to prevent the principal from dissipating funds that could be used to satisfy the bond if the surety knows it will be called upon to pay the debt or perform the obligation on the bond, suspects that the principal has some or all of the necessary funds to do so, and fears that the principal may abscond with those funds.

23 § 61:63 (4th ed. 2024).

Further, CAL SD asserts that the parties presented a set of agreed jury instructions, without objection from Interwest, that required the jury to consider the breach questions and reach a binding verdict.

[¶16.] Whether an action is at law or in equity is the first step to determine whether a party has a right to a jury trial.

> The right to a jury trial is guaranteed both litigants in Article VI, § 6 of the South Dakota Constitution and SDCL 15-6-38(a), (b). This right, however, does not exist in all civil cases. In cases where the pleadings seek equitable relief or where the legal relief is incidental, a jury trial is a matter for the trial court's discretion. Conversely, when the action is at law, either party has a right to a jury trial.

*First Nat'l Bank of Philip*, 2002 S.D. 36, ¶ 10, 642 N.W.2d at 201 (citing *First W. Bank, Sturgis v. Livestock Yards*, 466 N.W.2d 853, 856 (S.D. 1991)). This Court "look[s] 'to the common law' to determine whether a claim is an action at law . . . or whether it is an equitable action . . . ." *Granite Buick*, 2014 S.D. 78, ¶ 9, 856 N.W.2d at 803.

[¶17.] "Although the declaratory judgment procedure largely originated in equity, declaratory relief *per se* is neither legal nor equitable." *First Nat'l Bank of Philip*, 2002 S.D. 36, ¶ 11, 642 N.W.2d at 201 (quoting *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997)). To determine whether an action is legal or equitable, "the courts should look beyond the form in which the action is brought" and "look[] to the ultimate and entire relief sought, as presented by the pleadings, including the complaint, answer, cross-complaint and prayer for relief." *Id.* ¶ 10 (citing *Arlt v. Langley*, 56 S.D. 79, 227 N.W. 469, 473 (1929)).

[¶18.] In its complaint, CAL SD alleged that because of Welsh's untimely death it "was not able to obtain the necessary approvals for the financing or purchase of the Property by the closing date." The complaint further alleged that Interwest improperly refused CAL SD's demand to return the earnest money deposit. CAL SD prayed for the following relief:

1. For a declaratory judgment determining the rights and responsibilities of the parties under the purchase agreement, including but not limited to the cancellation, or lack thereof, of the purchase agreement, as well as [CAL SD's] right to the recovery of [CAL SD's] earnest money payment;
2. For the recovery of [CAL SD's] damages, including, but not limited to [CAL SD's] costs and interest accrued in an amount to be determined at the time of trial;
3. For the recovery of [CAL SD's] reasonable costs and disbursements associated with this action, including attorney's fees as permitted by South Dakota law;
4. For such other and further relief that the Court deems just and equitable.

[¶19.] In sum, the declaratory relief sought by CAL SD included a determination of the parties' rights and obligations under the Purchase Agreement and the return of the earnest money deposit, after CAL SD claimed it was unable to obtain financing. In seeking return of the earnest money deposit, CAL SD relied upon the subject to financing provision of the Purchase Agreement, which provided: "[I]f purchaser is unable to secure financing, if so contingent, . . . this agreement is void and [CAL SD's] earnest money shall be returned in full, less any expenses incurred on [CAL SD's] behalf[.]"[4]

---

4. Interwest's equitable affirmative defenses, raised in its answer, were not presented at trial. The plain terms of the Purchase Agreement and question of breach were the only issues before the court.

[¶20.]    The validity and enforcement of the Purchase Agreement was expressly conditioned upon CAL SD obtaining financing to purchase the subject property. If CAL SD was unable to obtain financing, the Purchase Agreement, by its own terms, was "void" and the "earnest money shall be returned in full, less any expenses incurred on [CAL SD's] behalf[.]" The issue presented at trial was whether CAL SD was unable to obtain financing and made a good faith effort to do so.

[¶21.]    Contrary to Interwest's premise, this was not an equitable action to rescind the Purchase Agreement under SDCL chapter 21-12.[5] Rather, CAL SD's action was solely to declare and enforce its contractual rights and obligations under the Purchase Agreement based upon its claim it was unable to obtain financing. Once the jury determined CAL SD was unable to obtain financing, the Purchase Agreement was void or rescinded per its own terms, without further action, and the earnest money deposit was to be returned to CAL SD. The judicial declaration sought by CAL SD was not equitable relief to rescind the Purchase Agreement, but a legal determination that the Purchase Agreement was already "void" by the

---

5.    "An action for rescission may be brought as a legal action pursuant to SDCL ch. 53-11, or as an equitable action pursuant to SDCL ch. 21-12." *Knudsen v. Jensen*, 521 N.W.2d 415, 417 (S.D. 1994). The grounds for legal rescission are set forth in SDCL 53-11-2 and these same grounds are the basis for equitable rescission under SDCL 21-12-1. The difference between the two types of rescission is in the relief sought. "If the action is in equity, the rescission is accomplished by court decree." *Id.* (citation omitted). "Rescission is equitable if the complaint asks the court to order rescission of a contract. It is legal, if the court is asked to enforce a completed rescission." *Skoglund v. Staab*, 312 N.W.2d 29, 31 (S.D. 1981).

inability of CAL SD to obtain financing.[6]  As such, the declaratory relief sought by CAL SD was legal in nature and the circuit court properly submitted the case to the jury for a binding verdict.

[¶22.]    We affirm.

[¶23.]    KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

---

6.    In *Granite Buick*, 2014 S.D. 78, ¶ 14, 856 N.W.2d at 804, the remedy sought was equitable relief, specifically an injunction.  This Court held the circuit court erred by not preparing findings of fact and conclusions of law.  *Id.* ¶ 16. Unlike *Granite Buick*, the claim sought here was for legal relief.